Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| EUGEN E. SCHNEE ANGHRN<br><br>Recurrido<br><br>v.<br><br>Oriental Bank y otros<br><br>Peticionarios | KLCE202301337 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.: SJ2022CV04516 (805)<br><br>Sobre: Daños |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres y la jueza Rivera Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 12 de diciembre de 2023.

Comparece ante este tribunal apelativo, Oriental Bank (Oriental o el peticionario), mediante el recurso de epígrafe y nos solicita la revocación de la *Orden* dictada y notificada el 30 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). En el referido pronunciamiento, el foro primario declaró "no ha lugar" a la segunda *Moción de Sentencia Sumaria* instada por el compareciente.

Por los fundamentos que expondremos a continuación, acordamos expedir el auto de *certiorari* y revocar la *Orden* impugnada.

### I.

La causa del título se inició el 27 de mayo de 2022, ocasión en que la parte recurrida, el Sr. Eugen Schnee Anghrn (señor Schnee Anghrn o el recurrido), presentó una *Demanda* sobre daños y perjuicios contra Oriental y otros demandados de nombres desconocidos.[1] En esencia, alegó que, en el 2015, otorgó un

---

[1] Véase el Apéndice del Recurso, a las págs. 2-7.

Número Identificador
SEN2023_____

préstamo hipotecario con Scotiabank, fusionado con Oriental, cuyos pagos remitió puntualmente. Expuso que, a finales de febrero de 2021, "para [su] sorpresa" recibió una carta del Departamento de Cobros de Hipoteca del peticionario, mediante la cual se le notificó acerca de un atraso en sus pagos. La comunicación no explicó el motivo ni la fecha del atraso. El recurrido recibió sendas misivas en marzo, abril y mayo de 2021, con notificaciones de deudas ascendentes a $1,472.72, $2,902.72 y $3,276.08, respectivamente. El señor Schnee Anghrn sostuvo que realizó sus pagos por la cantidad pactada originalmente de $1,267 y que sus gestiones para comunicarse con Oriental fueron infructuosas. No fue hasta mediados de abril de 2021 que recibió una nueva libreta de pago, efectiva a marzo de 2021, la cual consignaba un pago mensual de $1,430.00. Entonces, el recurrido advino en conocimiento que, debido a los presuntos atrasos en su cuenta hipotecaria, Oriental notificó a las agencias de crédito. Al solicitar su calificación, el señor Schnee Anghrn constató que esta arrojó un puntaje de 624, grado D, cuando su calificación anterior era de 859, grado B. El recurrido supo que Oriental realizó la notificación a las agencias crediticias en febrero de 2021.

Al tenor de lo anterior, el recurrido adujo que Oriental fue negligente al incumplir con la práctica bancaria de notificar mensualmente un estado (Statement D) de préstamos hipotecarios con el desglose de su pago y al omitir explicar de manera oportuna que el aumento en su pago hipotecario se debió a un alza en las contribuciones sobre la propiedad. El señor Schnee Anghrn acotó que Oriental incurrió en negligencia cuando, sin aviso previo y prematuramente, realizó una notificación a las agencias de crédito, lo cual provocó que su puntuación crediticia mostrara un declive sustancial. Así, pues, solicitó una indemnización ascendente a $50,000.

El 22 de julio de 2022, Oriental presentó su *Contestación a Demanda*.[2] Es esta, se limitó a negar las alegaciones en su contra al palio del estribillo "por falta de información y/o creencia sobre la veracidad de su contenido". Entre sus defensas afirmativas, apuntó que el reporte a las agencias de crédito fue conforme con los procesos y regulaciones existentes. Afirmó también que no era responsable del aumento de las contribuciones sobre la propiedad y que no había incumplido ninguno de los deberes que le correspondían.

Así las cosas, el 23 de marzo de 2023, Oriental interpuso una *Moción de Sentencia Sumaria*.[3] El señor Schnee Anghrn se opuso;[4] y el peticionario replicó.[5] El TPI evaluó los escritos ante sí y, el 12 de julio de 2023, notificada al día siguiente, emitió una *Resolución*, mediante la cual denegó resolver el pleito por la vía sumaria.[6] En cumplimiento con las normas procesales, esbozó los siguientes hechos medulares que consideró probados:

> 1. El Sr. Schnee es una persona mayor de edad, casado con Noemi Falero bajo el régimen de separación de bienes y reside en San Juan, Puerto Rico.
>
> 2. Oriental Bank es [una] corporación organizada y autorizada a hacer negocios en Puerto Rico conforme a las leyes del Estado Libre Asociado de Puerto Rico, radicada en San Juan, PR, 00918.
>
> 3. El 30 de mayo de 2015, el Sr. Schnee otorgó una hipoteca a favor de Oriental Bank con el número treinta y uno (31) ante el notario público autorizado Lcdo. Ángel A. Colón Vázquez.
>
> 4. El 30 de mayo de 2021, el Sr. Schnee firmó el pagaré hipotecario, bajo el testimonio 23,289 ante el notario Ángel A. Colón Vázquez, a favor de Oriental Bank.
>
> 5. La mencionada escritura se identifica como préstamo hipotecario con el número 60064791.
>
> 6. Previo al 1 de marzo de 2021, el pago mensual del préstamo hipotecario era de 1,267.00.

---

[2] *Íd.*, a las págs. 8-12.

[3] *Íd.*, a las págs. 13-23, con anejos a las págs. 24-156.

[4] *Íd.*, a las págs. 157-165, con anejos a las págs. 166-269.

[5] *Íd.*, a las págs. 270-276, con anejo a las págs. 277-278.

[6] *Íd.*, a las págs. 279-288.

7. El 29 de enero de 2021, Oriental Bank envió una carta a la dirección del Sr. Schnee. En esta, el banco le indicó al Sr. Schnee que el Centro de Recaudación de Ingresos Municipales "CRIM" creó un suplemento de ampliación en el que habría un aumento por el valor tasado de su propiedad efectivo el segundo semestre 2019-2020 en adelante.

8. El 29 de enero de 2021, Oriental Bank le envió al Sr. Schnee una carta con el título: "Annual Escrow Account Disclosure Statement". En esta, el banco le notificó al Sr. Schnee que, por motivo de la deficiencia en su cuenta, su pago mensual aumentaría a $1,430.00. Efectivo el 1 de marzo de 2021.

9. El préstamo hipotecario sufrió un aumento de $163.00, cambiando su mensualidad a 1,430.00.

10. El aumento en el pago del préstamo hipotecario fue efectivo el 1 de marzo de 2021.

11. El 9 de marzo de 2021, Oriental Bank le envió la libreta de pago al Sr. Schnee.

12. El 21 de abril de 2021, Transunion expidió un informe de crédito a solicitud del Sr. Schnee, en el que se refleja que, para el 31 de marzo de 2021, existía una mora de 30 días en la cuenta hipotecaria del Sr. Schnee con Oriental Bank por 1,472.00. Esta cantidad adeudada se debía a un pago programado por 1,430.00 que se debió efectuar, según Transunion, en febrero de 2021.

13. El término que se estipula en el reglamento interno de Oriental Bank para reportar a las agencias de crédito los pagos morosos es de treinta (30) días.

14. Una vez Oriental Bank envió la libreta de pago y el Sr. Schnee la recibió, el banco no tenía obligación de enviar estados de cuenta periódicos con el ajuste del nuevo pago mensual adeudado.

De igual modo, el TPI consignó los hechos en controversia que, según su discreción, justificaban la celebración de un juicio plenario:

1. Si Oriental Bank cumplió o no con el término estipulado en su política interna de reportar a las agencias crediticias las incidencias en los pagos morosos en los préstamos hipotecarios al haber referido los pagos del Sr. Schnee a las agencias de crédito previo al 1 de marzo de 2021.

2. Si al Oriental Bank cumplir o no con su política interna ocasionó algún daño en el crédito del Sr. Schnee, incluyendo cierres de cuentas de crédito y denegatorias de nuevas líneas de crédito.

3. Si el Sr. Schnee incurrió en algún grado de negligencia al haber continuado pagando su préstamo hipotecario durante los meses posteriores a marzo de 2021 por la mensualidad pautada luego de haber recibido [una] libreta de pagos nueva, en la que se reflejaba el aumento del préstamo hipotecario.

El TPI recalcó la existencia de elementos subjetivos, de intención y propósitos mentales, así como la adjudicación de credibilidad, los cuales impedían la resolución de forma sumaria. El dictamen aludido no fue objeto de impugnación.

Posteriormente, luego de observados otros trámites de rigor,[7] el 14 de septiembre de 2023 y con la anuencia del TPI, Oriental presentó una segunda *Moción de Sentencia Sumaria*, en su modalidad de insuficiencia de la prueba. En esta, solicitó la desestimación con perjuicio de la *Demanda*.[8] En suma, alegó que el señor Schnee Anghrn carecía de prueba para demostrar los elementos de acción del estatuto federal que ocupa el campo, *Fair Credit Reporting Act*, 15 USC sec. 1681 *et seq.* (FCRA, 26 de octubre de 1970), ni los de la legislación estatal, Ley núm. 364 de 2 de septiembre de 2000, *Ley de Agencias de Informes de Crédito*, 7 LPRA sec. 2031, *et seq.* (Ley núm. 364-2000).[9] En particular, Oriental adujo que, culminado el descubrimiento de prueba, el recurrido adolecía de evidencia sobre los elementos de información falsa proporcionada con malicia o intención deliberada de hacerle daño, establecidos en el precepto federal.[10]

---

[7] Refiérase al Apéndice del Recurso, a las págs. 289-305; 306-307.

[8] *Íd.*, a las págs. 311-321, con anejo a las págs. 322-430.

[9] La Ley núm. 364-2000 provee a los consumidores un recurso administrativo para la resolución de disputas relativas a su historial de crédito. El estatuto adopta la política federal expresada en el FCRA. En esencia, establece que un consumidor puede impugnar la información crediticia ante las agencias concernidas y presentar una reclamación judicial sobre daños y perjuicios, sujeta a los lineamientos federales. Art. 11, Ley núm. 364-2000, 7 LPRA sec. 2039.

[10] El FCRA otorga inmunidad cualificada a las agencias proveedoras de información de crédito. Con relación a las acciones en daños que los clientes puedan instar por la divulgación de su información crediticia, así reza:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any

El señor Schnee Anghrn incoó una *Oposición a Segunda Moción de Sentencia Sumaria* el 16 de octubre de 2023.[11] Arguyó que, como parte demandante, expuso en el *Informe con Antelación al Juicio* las controversias pendientes de adjudicación.[12] Enfatizó que el litigio no versaba sobre si Oriental proveyó intencionalmente información crediticia falsa, sino si Oriental incumplió su política interna al reportar a las agencias crediticias los alegados atrasos del préstamo hipotecario del recurrido desde el primer mes del alegado atraso, así como la valorización de los daños reclamados por el incumplimiento imputado.

El 30 de octubre de 2023, el TPI notificó la *Orden* recurrida, en la que determinó: "Evaluada la posición de ambas partes, y a base de los fundamentos esbozados por la parte demandante, se declara no ha lugar a la solicitud de sentencia sumaria".[13]

Inconforme, Oriental acudió ante este foro intermedio imputándole al TPI haber cometido los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL PASAR POR ALTO QUE EL FAIR CREDIT REPORTING ACT OF 1970 OCUPA EL CAMPO Y AL PROCEDER CON UN RECLAMO PARA EL CUAL NO PUEDE PROVEER EL REMEDIO SOLICITADO POR EL DEMANDANTE.

---

person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report **except as to false information furnished with malice or willful intent to injure such consumer**. (Énfasis nuestro). 15 USC sec. 1681h (e).

[11] Véase el Apéndice del Recurso, a las págs. 431-436.

[12] Las controversias mencionadas son: "1. Existe controversia en cuanto a la fecha que el demandante se enteró por primera vez del aumento de los pagos del préstamo hipotecario efectivo el 1 de marzo de 2021, al recibir la libreta de pagos en o alrededor del 15 de abril de 2021. 2. Existe controversia en cuanto al atraso en el pago del préstamo hipotecario reportado por Oriental Bank en el mes de marzo de 2021, reportando que el demandante tenía en dicho mes una deuda vencida de 23 días y un alegado total de deuda en atraso de $1,272.72. 3. Existe controversia sobre si Oriental cumplió con su política de reportar los alegados atrasos del préstamo hipotecario del demandante a las agencias crediticias. 4. Valorización de los daños reclamados por el demandante al demandado Oriental incumplir con su política de reportar los alegados atrasos del préstamo hipotecario del demandante y las agencias crediticias desde el primer mes del alegado atraso". *Íd.*, a la pág. 294.

[13] *Íd.*, a la pág. 1.

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A DICTAR SENTENCIA SUMARIA POR INSUFICIENCIA DE LA PRUEBA Y, POR ESTA NEGATIVA, SOMETER A LAS PARTES A LAS EXPENSAS DE UN PROCESO EN EL QUE LA PARTE DEMANDANTE NO PODRÁ, EN FORMA ALGUNA, OBTENER EL REMEDIO QUE RECLAMA.

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL —LUEGO DE AUTORIZAR LA PRESENTACIÓN DE UNA MOCIÓN DE SENTENCIA SUMARIA— NO CEÑIRSE AL MANDATO DE LA REGLA 36.4 DE PROCEDIMIENTO CIVIL Y NO PORMENORIZAR LOS HECHOS SOBRE LOS QUE NO HAY CONTROVERSIA Y DETERMINAR AQUELLOS QUE PERMANECEN EN DISPUTA.

Analizado el recurso y al tenor de la determinación arribada, acordamos prescindir del escrito de la parte recurrida "con el propósito de lograr [el] más justo y eficiente despacho", según nos faculta la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

## II.

**El auto de *certiorari***

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *IG Builders at al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001). Esta discreción ha sido definida en nuestro ordenamiento jurídico como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. No significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *Negrón v. Srio. de Justicia, supra*, pág. 91.

La Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita nuestra autoridad para revisar las órdenes y resoluciones interlocutorias dictadas por los tribunales de primera instancia por medio del recurso discrecional del *certiorari*. La referida norma fija taxativamente los asuntos que podemos atender.

Su propósito es agilizar la resolución de los pleitos que se dilucidan ante las primeras instancias judiciales y evitar dilaciones injustificadas durante la tramitación de un litigio. *IG Builders at al. v. BBVAPR*, *supra*, pág. 336. En lo que compete al caso del título, **la Regla 52.1 de las de Procedimiento Civil,** *supra*, **establece que este foro revisor puede expedir un auto de** *certiorari* **que recurra la denegación de una moción de carácter dispositivo**.

Asimismo, para determinar si procede la expedición de un recurso de *certiorari* en el que se recurre de una resolución interlocutoria, debemos acudir también a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, a la que hemos impartido énfasis y lee como sigue:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*:
>
> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E) **Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.**
>
> F) **Si la expedición del auto** o de la orden de mostrar causa **no causan un fraccionamiento indebido del pleito** y una dilación indeseable en la solución final del litigio.
>
> G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los criterios antes transcritos nos sirven de guía para, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se

encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso que se nos presenta, no procede nuestra intervención.

**La sentencia sumaria por insuficiencia de la prueba**

La sentencia sumaria es un mecanismo procesal extraordinario y discrecional que tiene el propósito de facilitar la solución justa y rápida de los litigios y casos civiles que no presenten controversias genuinas de hechos materiales y que, por tanto, no ameritan la celebración de una vista en su fondo. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 594 (2013). Se trata de una herramienta para aligerar la tramitación de un caso, cuando de los documentos que acompañan la solicitud surge que no existe disputa sobre algún hecho material y lo que procede es la aplicación del derecho. *Ramos Pérez v. Univisión, supra*, pág. 214.

La Regla 36.3(e) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e), autoriza al tribunal a dictar sentencia sumaria cuando "no hay controversia real sustancial en cuanto a ningún hecho esencial y pertinente y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente".

En cuanto a la modalidad de sentencia sumaria por insuficiencia de prueba promovida por Oriental, el Tribunal Supremo ha opinado que procede cuando la parte demandante no cuenta con evidencia suficiente para probar su caso. El promovente debe demostrar y satisfacer los siguientes requisitos: (1) que el juicio en sus méritos es innecesario; (2) que el demandante no cuenta con evidencia suficiente para probar algún hecho esencial de su reclamación, y (3) que, como cuestión de derecho, procede la desestimación de la demanda. *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 786 (2016). Además, el ordenamiento exige que, al

disponer de un pleito mediante una solicitud de sentencia sumaria por ausencia de prueba, es indispensable que se le haya brindado a la parte promovida una oportunidad amplia para que realice un descubrimiento de prueba adecuado. Una vez concluye el proceso de descubrimiento, **el demandado debe demostrar que la prueba descubierta no satisface los elementos necesarios para establecer la causa de acción reclamada. Por su parte, el demandante debe fundamentar su oposición para justificar que, en efecto, merece su "día en corte"**. *Íd.*, a la pág. 787; véase, además, *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 732-734 (1994). Claro está, el tribunal resolverá lo que proceda en derecho y no necesariamente lo que solicita el promovente.

**La Regla 36.4 de las de Procedimiento Civil**

De otra parte y relacionado con la controversia que dispone del caso que nos ocupa, cuando el Tribunal de Primera Instancia determina que no procede dictar sentencia sumaria en el pleito ante sí, o que no procede conceder ese remedio en su totalidad, **es obligatorio que cumpla con lo expuesto en la Regla 36.4 de las de Procedimiento Civil**, 32 LPRA Ap. V, R. 36.4, que dispone lo siguiente:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, **será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaría limitada a los asuntos en controversia.** Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno. (Énfasis nuestro).

El texto de la Regla 36.4, *supra*, claramente **exige que se consignen los hechos controvertidos e incontrovertidos cuando se deniegue total o parcialmente una moción de sentencia sumaria**. En otras palabras, la única "excepción a la excepción" provista en la Regla 42.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, es la denegación parcial o total de una solicitud de sentencia sumaria". *Pérez Vargas v. Office Depot*, 203 DPR 687, 706 (2019). Como se conoce, la Regla 42.2, *supra*, establece como excepción a la normativa de especificar los hechos probados y sus conclusiones de derecho por separado "[a]l resolver mociones bajo las Reglas 10 o 36.1 y 36.2 de este apéndice, o al resolver cualquier otra moción [. . .]". *Íd.*

Al respecto, el tratadista Rafael Hernández Colón reiteró en su obra que, de no proceder la moción de sentencia sumaria o no concederse el remedio solicitado, el tribunal está obligado a resolver la petición mediante determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia y los que están realmente y de buena fe controvertidos. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. ed., San Juan, LexisNexis, 2017, sec. 2620, pág. 322. Asimismo, en torno a esta exigencia, el también tratadista José Cuevas Segarra explicó:

> Esta regla se modificó para disponer que el tribunal [...] está obligado a determinar, mediante resolución, los hechos esenciales y pertinentes sobre los que no existe controversia sustancial, así como aquellos hechos que estén controvertidos, **a los fines de que no se tenga[n] que relitigar los hechos que no están en controversia.**
>
> Lo importante de esta regla es que el nuevo texto mejorado **hace énfasis en el carácter mandatorio** de la determinación de los hechos materiales sobre los cuales no hay controversia sustancial y los hechos materiales que están realmente y de buena fe controvertidos. Esta es la única forma de propiciar una revisión adecuada por los foros apelativos. (Énfasis nuestro). J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Pubs. JTS, 2011, T. III, págs. 1074-1075.

El Tribunal Supremo ha determinado que este foro apelativo también debe cumplir con lo establecido en la citada Regla 36.4, *supra*. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118 (2015). No obstante, estamos limitados de dos formas: (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia y las teorías allí esbozadas; y (2) únicamente podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, así como si el derecho se aplicó de forma correcta, ya que no estamos compelidos a adjudicar los hechos medulares en disputa. **Esa tarea le corresponde exclusivamente al foro de primera instancia**. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004).

En fin, cuando nos encontramos ante una denegación, total o parcial, de una moción de sentencia sumaria, es al foro primario a quien le corresponde cumplir con la obligación de consignar en el dictamen que emita los hechos que entiende están en controversia y los que no lo están, según dispone la Regla 36.4 de las de Procedimiento Civil, *supra*. Solo así, estaremos en posición de poder revisar adecuadamente tal dictamen.

### III.

En el tercer señalamiento de error, Oriental planteó que el TPI incidió al no ceñirse al mandato de la Regla 36.4 de las de Procedimiento Civil, *supra*, toda vez que omitió pormenorizar los hechos incontrovertibles, así como determinar las cuestiones en controversia que ameritan la celebración de un juicio en sus méritos. Adelantamos que le asiste la razón.

Como cuestión de umbral, por tratarse de la denegación de una moción dispositiva, el recurso cumple con los criterios de la Regla 52.1 de las de Procedimiento Civil, antes citada. Además, examinado el expediente al palio de la Regla 40 de nuestro Reglamento, *supra*, concluimos que procede la expedición del auto

debido a que la decisión recurrida incumplió con las formalidades exigidas en las normas procesales de casos civiles y su jurisprudencia interpretativa. Incluso, estimamos que la etapa de los procedimientos en la que se encuentra el caso ante el foro primario es la más propicia para intervenir, toda vez que propende a que el TPI pueda delimitar con especificidad las controversias que habrá de dirimir en su día y el derecho aplicable a estas. Esto incluye también sobre qué no versa el pleito, ya que los litigantes manifiestan cierto desfase entre sus respectivas reclamaciones y defensas.[14]

Según indicamos, en virtud de la Regla 36.4 de las de Procedimiento Civil, *supra*, al denegar una solicitud de sentencia sumaria, el TPI viene obligado a consignar los hechos esenciales y pertinentes sobre los cuales no existe controversia sustancial y los hechos medulares que están realmente y de buena fe controvertidos. No constituye un asunto discrecional para el TPI decidir si cumple o no con la referida norma. Más bien, estamos ante una regla de procedimiento imperativa que impone al foro a *quo* el deber ineludible de emitir un pronunciamiento preciso de los hechos esenciales que considera se encuentran en controversia y que, a su entender, exigen el trámite ordinario del pleito. De este modo, se posibilita el poder revisar adecuadamente el dictamen que se emita.

Según reseñamos, el TPI cumplió a cabalidad con la Regla 36.4 de las Procedimiento Civil, *supra*, ante el examen de la primera solicitud de sentencia sumaria interpuesta por Oriental. Sin embargo, luego de autorizar y evaluar la segunda moción para la resolución por la vía de apremio, bajo la modalidad de insuficiencia de la prueba, dictó una escueta *Orden* en la que pronunció un "no

---

[14] Tomamos conocimiento judicial de la *Minuta* correspondiente a la vista de 30 de noviembre de 2023, en que el TPI señaló juicio en su fondo para el 20 de agosto de 2024. Refiérase a la entrada 74 en el expediente electrónico del Sistema Unificado de Manejo y Administración de Casos.

ha lugar". Con este proceder, se alejó del mandato procesal. Ello así, porque del dictamen que revisamos no surgen por separado los hechos medulares probados y aquellos que serán evaluados en la vista en su fondo.

En virtud de lo apuntalado, concluimos que el dictamen impugnado incumple con las disposiciones de la Regla 36.4 de las de Procedimiento Civil, *supra*. En consecuencia, revocamos la *Orden* recurrida y devolvemos el caso al foro primario para que emita un dictamen que se ajuste a las formalidades de la norma procesal omitida y, a su vez, permita que podamos ejercer adecuadamente nuestra función revisora de ser peticionado. Conforme con la determinación arribada, es innecesario atender los señalamientos de error primero y segundo según imputados, toda vez que el TPI debe justipreciar sus méritos o deméritos.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* solicitado y revocamos la *Orden* recurrida. En consecuencia, devolvemos el caso ante el Tribunal de Primera Instancia para que emita una resolución que cumpla con las disposiciones de la Regla 36.4 de las de Procedimiento Civil, *supra*.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones